In THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JENNIFER BRADY, et al. ) | |
| ) | |
| v. ) | NO. 3:05-0355 |
| ) | JUDGE CAMPBELL |
| ERIK MAASIKAS, et al. ) | |

MEMORANDUM

Pending before the Court is Defendant Maasikas' Motion for Summary Judgment (Docket No. 48). For the reasons stated herein, Defendant's Motion is GRANTED in part and DENIED in part. Plaintiff Jennifer Brady's claim for illegal search of the Brady residence is DISMISSED.

FACTS

This action was originally filed by Scott Brady, now deceased; Herbert Ray Brady, individually and as next friend for Leland L. Brady, Jr.; and Dwayne E. Roach against Defendants Maasikas, Pardue and Ellis, alleging violation of federal constitutional rights. Defendant Maasikas is a deputy sheriff employed by Cheatham County, Tennessee. Defendants Pardue and Ellis are bail bondsmen in Cheatham County, Tennessee.

On November 7, 2005, Jennifer Brady, as personal representative of the estate of Scott Brady, was substituted as a Plaintiff for Scott Brady. Docket No. 30. Plaintiff Herbert Ray Brady, both individually and on behalf of Leland L. Brady, Jr., voluntarily dismissed their claims on February 1, 2006. Docket No. 39.

Plaintiffs' Complaint alleges that on May 5, 2004, Defendants Maasikas, Pardue and Ellis traveled to Seville Road in Cheatham County, Tennessee, for the purpose of finding a man named Ricky Roach. Defendant Pardue had an outstanding bail bond for Ricky Roach, based upon his

failure to appear in court, and Defendant Maasikas had an arrest warrant for Ricky Roach, based upon the same conduct. Defendants had received word on May 5, 2004, that Ricky Roach was present on Seville Road.

Ricky Roach's brother, Plaintiff Dwayne Roach, and Plaintiffs Scott Brady and Jennifer Brady[1] lived on Seville Road. Defendant Pardue testified that, when he and the other Defendants arrived on Seville Road, he saw Ricky Roach in the residence of Scott and Jennifer Brady. Pardue Deposition, pp. 22 & 24. Defendants left their vehicles and approached the residence of Scott Brady. Defendant Pardue informed Mr. Brady that he needed to search the residence in order to apprehend Ricky Roach. It is disputed whether Mr. Brady actually allowed Defendant Pardue to enter the residence, merely moved away from the doorway such that Defendant Pardue could enter the residence, or attempted to prevent Defendants from entering his residence. Pardue Deposition, p. 31; Jennifer Brady Deposition, p. 25; Ellis Deposition, p. 33; Maasikas Deposition, p. 36.

The parties agree that, after Defendant Pardue entered the residence, a heated discussion ensued in the doorway between Scott Brady and Defendant Maasikas. Defendant Maasikas indicated that he had an arrest warrant for Ricky Roach, and Scott Brady inquired whether Defendant Maasikas had a search warrant. What happened between the two after that is disputed. Defendants contend that Scott Brady became belligerent and made verbal, physical, threatening, and aggressive gestures toward Defendant Maasikas. Maasikas Deposition, p. 35. Plaintiffs dispute that Scott Brady made verbal and physical gestures in a threatening and aggressive manner, although they agree that a heated discussion occurred. Docket No. 49, ¶ 12. Defendant Maasikas arrested

---

[1] At the time of this incident, Jennifer Brady was not yet married to Scott Brady and was known as Jennifer Wheeler.

2

Scott Brady, placing him into custody and handcuffs, with Defendant Pardue's assistance. Defendants contend that Defendant Pardue then escorted Mr. Brady in handcuffs to the patrol car and Defendant Maasikas placed Mr. Brady into the car. Defendant Maasikas admitted that Scott Brady never touched Defendant Maasikas. Maasikas Deposition, p. 108.

Plaintiffs claim that Defendants' search of the Brady residence was forceful, without consent or a search warrant, and illegal, in violation of Scott Brady's Fourth Amendment rights. Plaintiffs also contend that Defendant Maasikas' arrest of Scott Brady for disorderly conduct was without probable cause, in violation of the Fourth Amendment.[2]

Defendant Maasikas asserts that, during the arrest of Scott Brady, Leland Brady, a former Plaintiff (through his next of kin) in this action and brother of Scott Brady, arrived on the scene and began to be verbally abusive toward Defendants. Defendant Maasikas claims that when he told Leland Brady he also would be arrested, Leland Brady retreated to the home of Dwayne Roach and Defendant Maasikas pursued him there. Defendant Maasikas contends that he requested entry into the residence of Dwayne Roach to apprehend Leland Brady and that Dwayne Roach became verbally and physically belligerent toward him, refusing entry. Defendant Maasikas asserts that Dwayne Roach pushed and/or struck him in the chest, causing him to fall. Maasikas Deposition, pp. 45 & 47; see also Ellis Deposition, p. 50; Pardue Deposition, p. 51. Dwayne Roach contends that he never pushed or shoved Defendant Maasikas. Docket No. 53, ¶ 6. A neighbor, Mary Butler, testified that Dwayne Roach never kicked or punched or threw his knee at anyone. Butler

---

[2] Scott Brady was later acquitted of the charge in a bench trial in the General Sessions Court of Cheatham County.

Deposition, p. 102. Butler further stated that if Roach had pushed or shoved Defendant Maasikas and caused him to fall, she would have been able to see it, and she never saw it. Id., p. 106.

Defendants also claim that, as a result of Mr. Roach's belligerent behavior toward Defendant Maasikas, Defendant Maasikas had to implement strikes to Mr. Roach with his asp or baton and implement pepper spray to Mr. Roach in order to subdue him for arrest. Ellis Deposition, p. 51. Defendant Pardue testified that Dwayne Roach was standing when Defendant Maasikas struck him with the baton. Pardue Deposition, p. 56. Defendant Maasikas charged Dwayne Roach with assaulting a law enforcement officer and resisting arrest.

Plaintiff Dwayne Roach has testified, however, that he did not hit, punch, strike, push, shove or otherwise initiate physical contact with Officer Maasikas. Docket No. 53, ¶ 6. Plaintiff Roach testified that at the time he was struck with the baton or asp, he was immobilized by someone's knee being planted firmly in his back, that he was lying face down and restrained. Id., ¶¶ 8-9. Ms. Butler, testified that Roach was on the ground and being restrained when the second pepper spray was sprayed into his face. Butler Deposition, p. 111. Jennifer Brady testified that, while Dwayne Roach was on the ground, "the officers were on top of him beating him with this big, black, billy club." Jennifer Brady Deposition, p. 51.

Plaintiff Roach claims that he was arrested without probable cause, in violation of the Fourth Amendment,[3] and that Defendants employed unreasonable and excessive force in affecting that arrest, also in violation of the Fourth Amendment.

---

[3] Dwayne Roach was later acquitted of the assault charge in a bench trial in the General Sessions Court of Cheatham County. The State ultimately declined to prosecute the resisting arrest charge.

4

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

## QUALIFIED IMMUNITY

The doctrine of qualified immunity generally shields government officials from civil liability for performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Greene v. Barber, 310 F.3d 889, 894 (6th Cir. 2002); Seal v. Morgan, 229 F.3d 567, 580 (6th Cir. 2000).

In Saucier v. Katz, 121 S.Ct. 2151 (2001), the Supreme Court stated that a court required to rule upon a qualified immunity defense must consider the threshold question of whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. Id. at 2156; Greene, 310 F.3d at 894. If no constitutional right would

5

have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. Id.

The determination as to whether a right is "clearly established" is a determination that must be undertaken in light of the specific context of the case, not as a broad general proposition. Greene, 310 F.3d at 894. In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Id. The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. (citing Saucier, 533 U.S. at 202).

Qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 125 S.Ct. 596, 599 (2004). Because the focus is on whether the officer had fair notice that his conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation. Id. A police officer may be entitled to qualified immunity, obviously, even though he has in fact violated the plaintiff's rights; reasonable mistakes can be made as to the legal constraints on particular police conduct. Greene, 310 F.3d at 894.

In order to establish qualified immunity, Defendant would have to show that there are no disputed facts as to what happened. The issue of qualified immunity is a question of law for the

6

Court, but issues of fact relevant to determining whether qualified immunity applies are questions for the jury. Williams v. Pollard, 44 F.3d 433, 434-35 (6th Cir. 1995). Summary judgment is not appropriate if there is a genuine factual dispute relating to whether Defendant committed acts that allegedly violated clearly established rights. Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir. 1996).

## SCOTT BRADY

Plaintiff Jennifer Brady asserts, on behalf of Scott Brady, two claims against Defendant Maasikas: (1) illegal search of his residence, and (2) illegal arrest. The Court must determine whether, at the time in question, Officer Maasikas reasonably believed he had probable cause to search the Brady residence and probable cause to arrest Scott Brady.

The Court first notes that nowhere in the Complaint do Plaintiffs allege that Defendant Maasikas actually searched the Brady home. To the extent Plaintiffs contend Defendant Maasikas participated in the alleged illegal search, the extent of that participation was at the door of the residence, in conversation and alleged scuffling with Scott Brady. Nonetheless, the Court finds that, even in the light most favorable to the Plaintiffs, Officer Maasikas reasonably could have believed that Ricky Roach, for whom he had an arrest warrant, was in the Brady residence and that there was probable cause for a search. Defendant Pardue testified that he saw Ricky Roach in the residence when the Defendants arrived on the scene. Defendant Pardue conveyed that information to Defendant Maasikas. Defendants knew that Ricky Roach's brother lived across the street from the Brady residence.

Although warrantless searches of a home are presumptively impermissible absent consent or exigent circumstances, Steagald v. United States, 101 S.Ct. 1642, 1659 (1981), the Court finds

7

that Defendant Maasikas reasonably believed that Ricky Roach had fled into the Brady residence and reasonably believed that exigent circumstances existed in this case. The Court finds that, given the information he had at the time, Defendant Maasikas had probable cause to search the Brady residence to look for Ricky Roach. Thus, Defendant Maasikas did not violate Plaintiff Brady's Fourth Amendment rights with regard to the alleged search of the residence. The Court finds, at a minimum, that Defendant Maasikas is entitled to qualified immunity on Plaintiff Brady's illegal search claim, and his Motion for Summary Judgment on that claim is GRANTED.

On the illegal arrest claim, the facts are disputed as to whether Scott Brady was disorderly or resisting arrest. Defendant Maasikas admitted that Scott Brady never touched him. In a civil rights action, the existence of probable cause to arrest is a question of fact. Gregory v. Louisville, ___ F.3d ___, 2006 WL 909935 at *13 (6th Cir. April 11, 2006). There are factual disputes here as to what exactly happened between Scott Brady and Defendant Maasikas, such that the Court cannot determine, as a matter of law, that Defendant Maasikas is entitled to qualified immunity for this claim. Accordingly, Defendant Maasikas' Motion for Summary Judgment as to Scott Brady's illegal arrest claim is DENIED.

## DWAYNE ROACH

Plaintiff Roach has made two claims against Defendant Maasikas: (1) that he was arrested without probable cause, and (2) that Defendant used excessive and unreasonable force in affecting that arrest.

As with Scott Brady, the parties disagree as to whether Dwayne Roach was resisting arrest and whether he assaulted Defendant Maasikas. Because there are disputed issues of fact as to what actually happened between Roach and Maasikas, the Court cannot find, as a matter of law, that

8

Defendant Maasikas' actions were reasonable. Accordingly, Defendant Maasikas' Motion for Summary Judgment as to the illegal arrest claim is DENIED.

Plaintiff Roach also claims that Defendant Maasikas used excessive and unreasonable force in arresting him. Plaintiff argues that, that at the time Maasikas struck him with the baton or asp, he was immobilized by someone's knee being planted firmly in his back and that he was lying face down and restrained. If Plaintiff's statements are true, a jury could find that there was no reasonable need for Defendant Maasikas to strike Plaintiff Roach or spray pepper spray twice in his face. As noted above, Jennifer Brady testified that, while Dwayne Roach was on the ground, "the officers were on top of him beating him with this big, black, billy club." Jennifer Brady Deposition, p. 51.

The Court cannot find, as a matter of law, that Defendant Maasikas is entitled to qualified immunity on the excessive force claim because there are disputed issues of fact as to what force was actually applied and what circumstances surrounded that use of force. Such issues of fact relevant to determining whether qualified immunity applies are questions for the jury. Accordingly, Defendant Maasikas' Motion as to Plaintiff Roach's excessive force claim is DENIED.

## CONCLUSION

Defendant Maasikas' Motion for Summary Judgment (Docket No. 48) is GRANTED in part and DENIED in part. Plaintiff Jennifer Brady's claim for illegal search of the Brady residence is DISMISSED. The remaining claims will be tried, as previously scheduled, on August 1, 2006.

IT IS SO ORDERED.

                                             *Todd Campbell*
                                           TODD J. CAMPBELL
                                           UNITED STATES DISTRICT JUDGE